## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PEMBROKE PUBLIC SCHOOLS,<br><br>Plaintiff,<br><br>v.<br><br>JOHN AND JANE DOE, as Parents of JACK DOE,<br>A Minor, and MASSACHUSETTS BUREAU OF<br>SPECIAL EDUCATION APPEALS.<br><br>Defendants. | CIVIL ACTION<br>NO. |

## COMPLAINT

1.      This is an appeal from two decisions and orders rendered by the

Massachusetts Bureau of Special Education Appeals (hereinafter the "BSEA") in BSEA

#12-0507.  Plaintiff, Pembroke Public Schools (hereinafter "Pembroke"), seeks reversal

of the Hearing Officer's March 2, 2012, Decision and Order attached hereto as Exhibit A

and her May 18, 2012, Decision and Order attached hereto as Exhibit B.

2.      This action is brought pursuant to the provisions of the Individuals with

Disabilities Education Act (IDEA), 20 U.S.C., §1415 (i)(2) and Chapter 766 of the Acts

of 1972 (M.G.L. c.71B), and M.G.L. c. 30A, §14 (the Administrative Procedure Act).

3.      This Court has jurisdiction over Pembroke's claim pursuant to 28 U.S.C.,

§1331, 20 U.S.C., §1415(i)(3), 28 U.S.C., §1367, and 28 U.S.C., §§2201 and 2202.

4.      Pembroke is a public school district established pursuant to the laws of the

Commonwealth of Massachusetts which provides public school education to children

residing in the Town of Pembroke.  Its administrative offices are located at 72 Pilgrim

Road, Pembroke, Massachusetts.  Pembroke is responsible for, among other things,

providing a free appropriate public education in the least restrictive environment for all students with disabilities who are residents of the Town of Pembroke, including Jack.

5.      **The Does reside in Pembroke.**  John and Jane Doe are the parents of Jack Doe (Jack), a 12 year old seventh-grader at Pembroke Community Middle School.  Their identities have been provided to the court in a separate confidential filing.  Their identities will also be known to the BSEA by virtue of the reference to its case number in paragraph 1, *supra*, and Exhibits A and B, attached hereto.

6.      Defendant BSEA is the administrative body in Massachusetts responsible for resolving disputes between parents and school districts concerning the provision of special education services, including, *inter alia*, conducting due process hearings, and issuing decisions, orders, and rulings.

7.      Jack is of at least average intelligence and is eligible for special education due to language-based disabilities which affect his performance in reading, writing, spelling and math.  In addition, Jack can become overly anxious at times and requires staff support with coping skills and problem-solving steps.  Sometimes he has difficulty with peers.

8.      Pembroke has responded to Jack's needs in a way that has led him to make effective progress and access the curriculum.

9.      The Does rejected Pembroke's proposed 2011-2012 independent education program (IEP) for Jack, as well as his placement at Pembroke Community Middle School, but they accepted the services offered in that IEP.  Pembroke has been providing those services.

10.     Thereafter, the Does filed a request for hearing at the BSEA.  According to the hearing officer, the issues for hearing were whether the 2011-2012 IEP is reasonably calculated to provide Jack with a free appropriate public education in seventh grade or could be made appropriate; whether the 2010-2011 IEP the Does had fully accepted until they rescinded their consent shortly before it expired provided Jack with a free appropriate public education in sixth grade; and whether Jack should be placed at the private Kildonan School (Kildonan) in Armenia, New York, as a residential student, either because the 2011-2012 IEP would not provide him a free appropriate public education or as compensation for the fact that his sixth grade IEP did not provide him with a free appropriate public education.  Exhibit A, p.2.

11.     A due process hearing was held at the BSEA on December 7, 16, and 20, 2011.

12.     The hearing officer never specifically addressed the issue of the sixth grade (2010-2011) IEP.  Instead, relying upon testing conducted by an independent evaluator in a single anxiety-producing session during sixth grade, and ignoring the testimony of the educators who saw and worked with Jack on a daily basis in seventh grade, all of whom testified that Jack is making effective progress and accessing the curriculum, including the seventh grade curriculum in his mainstream grade-level content-area classes, ordered Pembroke, within 30 days, to:

> locate or create a public or private educational placement for Student that is a fully-integrated language-based program designed to meet the needs of children with at least average intelligence who have severe dyslexia, and are several years behind their grade level in basic reading and writing skills.  The placement must provide, at a minimum, daily individual Orton-Gillingham tutoring in

Pembroke filed a motion for a postponement, proposing May 10, 2012, when its witnesses were available, as an alternate hearing date.

18.     On Wednesday, April 25, 2012, the hearing officer granted Pembroke's request for brief postponement and scheduled a conference call for Thursday, April 26, 2012.

19.     During the conference call, the hearing officer scheduled the compliance hearing for Monday, April 30, 2012.  During that call, Pembroke's counsel stated that she knew Pembroke witnesses were available on May 10, 2012, the date Pembroke proposed in its motion to postpone, but did not know the witnesses' availability on April 30. Parents' counsel also stated that he would have to confirm parents' expert's availability for April 30.  Pembroke understood that the April 30, 2012, date was subject to the availability of witnesses and that May 2, 2012, would be an alternate date.  On Friday, April 27, 2012, despite numerous e-mails from Pembroke's counsel to the Does' counsel and the hearing officer indicating that its witnesses could not all be available on Monday, April 30, 2012, the hearing officer failed to respond.  As a result, Pembroke was forced to hearing despite the unavailability of the co-director of the language-based program at SSEC, who also happened to be the certified Orton-Gillingham specialist who would have provided the required tutorial and the necessary instruction and consultation to integrate Orton-Gillingham strategies throughout Jack's day.

20.     At the compliance hearing, Pembroke presented the testimony of Dr. Henry Perrin, executive director of SSEC (which includes a number of programs other than LEP), Laurie Dolan, co-director of LEP, and Dr. Aron Blidner, Pembroke school

psychologist, who is familiar with the LEP program and observed it again the week before the hearing.

21.     The evidence presented demonstrated that the SSEC's substantially separate language-based program (LEP) can provide Jack with the program and services the hearing officer ordered in a far less restrictive environment than a private residential school in New York where Jack will be separated from his family, friends, and community.  Both witnesses from SSEC testified at the compliance hearing that LEP was designed for students with language-based disabilities, including dyslexia; that the students in the program were in the average range of intelligence; that LEP could provide the required daily Orton-Gillingham tutorial by a certified Orton-Gillingham specialist; and that the certified specialist, who is also one of the two co-directors of LEP, could integrate the Orton-Gillingham methodology into Jack's other classes.  In addition, because of the program's location in a local public middle school, Jack would be able to participate in sports and extracurricular activities in that middle school or return to participate in such activities at Pembroke Community Middle School.  Both SSEC witnesses testified that their program, LEP, complied with the hearing officer's March 2, 2012, order.

22.     Nevertheless, and despite the absence of any evidence about the Kildonan School other than copies of pages from its website (which Pembroke could not cross examine) and the Does' expert's testimony based upon a visit there some four years before and a telephone call to the school shortly before the hearing, the hearing officer ordered Pembroke to place Jack at Kildonan because it "appeared" to be appropriate, also

giving the Does the option to have Jack remain at Pembroke Community Middle School and begin at Kildonan with the summer program. Exhibit B.

23.     The Does have opted to keep Jack at Pembroke Community Middle School through the end of this school year. Pembroke has sent the Does an amendment to the 2011-2012 IEP, extending Jack's services through the end of the school year and also proposing a daily Orton-Gillingham tutorial to begin immediately. A copy of the proposed amendment is attached hereto as Exhibit C.

## COUNT ONE

24.     Pembroke incorporates herein by reference the allegations in paragraphs 1-23 as if fully restated herein.

25.     Each of Jack's seventh grade teachers enthusiastically testified to Jack's success in seventh grade and provided examples of that progress. The unanimous opinion of the educators who see Jack every day is that he is making effective progress; is thriving socially, emotionally, and academically at Pembroke Community Middle School; and does not require a substantially separate program to receive a free appropriate public education as ordered in the BSEA'S March 2, 2012, Decision and Order because he can learn in the less restrictive environment of a partial inclusion program where he is mainstreamed for content-area classes.

26.     Although Jack requires a specialized education program to address his needs, the preponderance of the evidence at hearing clearly demonstrated that he does not need placement in a substantially separate program with no opportunity for mainstreaming or placement in an unapproved, private residential school in New York. In any such placement, Jack will be deprived of (1) the ability to be educated with his

non-disabled peers and to shine in his inclusion (mainstream) classes as he has in seventh grade at Pembroke Community Middle School, (2) continued association with his friends, (3) continued participation in town and school sports and activities, and (4) remaining with his family.

27.     According to the preponderance of the evidence presented at the hearing, Jack's IEP and the services being provided to him pursuant to his 2011-2012 IEP have resulted in effective progress in all areas.  The 2011-2012 IEP which was the subject of the BSEA hearing, increased services for Jack and includes more Reading, English Language Arts, and daily time in the Learning Center, as well as special education and paraprofessional support in content-area inclusion classes.  The program is language-based for reading and ELA, with language-based supports and modifications provided to Jack in his mainstream content-area classes.

28.     According to the preponderance of the evidence presented at the hearing, Jack's IEP, and the teachers who see Jack every school day and know him very well, the language-based program Jack currently receives provides him with the intensity of services which led to his success in seventh grade, including success in his mainstream classes.

29.     The educators who see Jack and work with them every day, including his seventh grade reading and ELA teacher, as well as each of his content-area teachers (math, science, and social studies), all testified that Jack is making effective progress under the current IEP with the services being provided to him, that he actively participates in all his classes and completes grade level work in his mainstreamed math, science, and social studies classes with the modifications and accommodations in his IEP.

Each of Jack's inclusion content-area teachers testified that Jack can and does access the 7th grade curriculum.

30.    Although Jack does not yet read at grade level, the preponderance of the evidence at hearing demonstrated that Jack has independent literacy and academic skills, and possesses a useable level of independent reading skill.

31.    Evidence from the educators who see Jack and work with him every day was that his motivation had improved.  He expressed an interest in improving his mechanical writing skills, including learning to write cursive.  He participates in and enriches his classes.  He volunteers to read aloud.  The evidence was that he is making great progress in reading, though the progress is slow and steady.  He is also making progress in English language arts, and his last MCAS score was "Proficient."

32.    Evidence of effective progress demonstrates that Jack is receiving FAPE.  He is appropriately placed at Pembroke Community Middle School and his IEP provides him the necessary language-based reading and ELA classes, as well as the language-based supports which are helping him be successful in mainstream content-area classes.

33.    According to the testimony at the hearing, none of Jack's seventh-grade teachers believe Jack needs a substantially-separate program to access the curriculum.

34.    Neither the Kildonan School, nor any other private or public school program for children with disabilities can provide Jack with a free appropriate public education in the least restrictive environment since any such program would completely deprive him of the opportunity to participate in classes with his non-disabled peers, and, therefore, the BSEA's March 2, 2012 Decision and Order is contrary to the requirements of the IDEA.

35.    The 2011-2012 IEP provides Jack a free appropriate public education because it is tailored to address his unique needs in a way reasonably calculated to enable him to make meaningful and effective educational progress and because the program and services are delivered in the least restrictive environment appropriate to meet Jack's needs. Honig v. DOE, 484 U.S. 305, 311 (1988); Board of Education of Hendrick Hudson Central School District  v. Rowley, 458 U.S. 176, 192 (19820; Lenn v. Portland School Committee, 998 F.2d 1083 (1st Cir. 1993); Roland v. Concord School Committee, 910 F.2d  983 (1st Cir. 1990); Burlington v. Department of Education, 736 F.2d 773, 788 (1st Cir. 1984); 603 CMR 28.05(4)(b) (Student's IEP must be "designed to enable the student to progress effectively in the content areas of the general curriculum").

36.    The BSEA's March 2, 2012, Decision and Order is contrary to the law which provides that although Jack's IEP must be "reasonably calculated to enable [him] to receive educational benefits" ( Lenn v. Portland School Committee, 998 F.2d 1083, 1086(1st Cir. 1993) Lessard v. Wilton-Lyndeborough Cooperative School District, 518 F. 3d. 18, 23 (1st Cir. 2008); Bd.of Ed.of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 US 176 (1982)), the benefit conferred by the IEP does not need to reach the highest level attainable or the level necessary to maximize his potential.  Jack's seventh-grade teachers all testified to the educational benefits Jack has received and is receiving from the services specified in the IEP.

37.    The BSEA's March 2, 2012, Decision and Order is contrary to the law which provides that as long as Pembroke's program is appropriate for Jack, it is irrelevant that additional or different services would likely result in greater educational progress or benefit.  The "IDEA does not require a public school to provide what is best for a special

needs child, only that it provide an IEP that is 'reasonably calculated' to provide an 'appropriate' education as defined in federal and state law." Lt. T.B. ex rel. N.B. v. Warwick Sch. Com., 361 F. 3d 80, 83 (1st Cir. 2004).

38.    According to the preponderance of the evidence, the 2011-2012 IEP has provided effective results and demonstrable improvement.  Every teacher testified to Jack's progress and provided evidence to demonstrate that progress.  There was no evidence to the contrary.  The 2011-2012 IEP and the services provided therein, which the Does accepted, were not in place and were not being provided when the Does' hired expert evaluated Jack.

39.    20 U.S.C. §1412(a)(5)(A) requires that:

> [t]o the maximum extent appropriate, children with disabilities . . . are [to be] educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

See also 34 CFR 300.114(a)(2(i).  "[M]ainstreaming may not be ignored, even to fulfill substantive educational criteria."  Rome Sch. Comm. v. Mrs. B., 247 F.3d 29, 33 (1st Cir. 2001), quoting Roland v. X School Committee, 910 F.2d 983, 992-993 (1st Cir. 1990).

40.    The BSEA's decision ordering Pembroke to locate or create a substantially separate program designed for dyslexic students is contrary to law and ignores the IDEA's clearly stated preference for mainstreaming, that is, educating students with disabilities alongside their nondisabled peers to the extent possible, and the requirement that the child be provided a free appropriate public education in the least restrictive environment.

41.    In addition, despite finding that Jack required the Orton-Gillingham methodology for his reading instruction, the hearing officer never addressed the issue of whether the 2011-2012 IEP could be made appropriate by the addition of an Orton-Gillingham tutorial and the integration of Orton-Gillingham methodology into the language-based supports and accommodations provided to Jack in his inclusion content-area classes.

42.    The BSEA's March 2, 2012, Decision and Order must be reversed because it is contrary to law, against the substantial weight of the evidence, arbitrary and capricious, an abuse of discretion, fails to provide Jack a free appropriate public education in the least restrictive environment, and is otherwise not in accordance with law because, under the facts of this case, Pembroke's IEP and services did not and does not deny Jack a free appropriate public education.

## COUNT TWO

43.    Pembroke incorporates herein by reference the allegations in paragraphs 1-42 as if fully restated herein.

44.    Even if the Court affirms the BSEA's March 2, 2012, Decision and Order, the BSEA's May 18, 2012, Decision and Order is contrary to law and not supported by a preponderance of the evidence.

45.    Pembroke located a substantially separate language-based program (LEP) at SSEC which could provide Jack a daily Orton-Gillingham tutorial with a certified Orton-Gillingham specialist and could integrate Orton-Gillingham methodologies into content-area classes where the teachers already use a multi-sensory, language-based approach.

- 12 -

46.     Pembroke presented the testimony of SSEC's executive director and one of the two co-directors of the language-based program (LEP) to prove that the program complied with the BSEA's March 2, 2012, Decision and Order.  Both testified that the LEP would provide Jack with the required daily Orton-Gillingham tutorial and could integrate Orton-Gillingham methodologies into Jack's content-area classes.

47.     According to the evidence, the SSEC's LEP program was developed for dyslexic students, as well as students with other language-based disabilities, and the students in the program are of average intelligence.  In addition, SSEC witnesses testified that the program used multisensory, language-based methodologies in content-area classes. They also testified that because the program was located in a public middle school, there were opportunities for inclusion, as well as opportunities to participate in sports and extra-curricular activities in that middle school.  Moreover, there was evidence that because of the school's proximity to Pembroke, Jack would continue to have opportunities to participate in sports and extra-curricular activities at Pembroke Community Middle School, as well as town sports in his hometown.

48.     Pembroke also presented the testimony of Dr. Aron Blidner to testify to his knowledge of the program and his observation of the program, including its use of a multi-sensory, language-based methodology.

49.     The hearing officer's May 18, 2012, Decision and Order placing Jack at the Kildonan School in Armenia, New York is against the substantial weight of the evidence and is contrary to law.  A residential placement is the most restrictive.  The decision places Jack far from home in another state, far from his family, friends, and

community, where he cannot be mainstreamed and cannot be educated with his nondisabled peers.

50.    The hearing officer's May 18, 2012, Decision and Order placing Jack at the Kildonan School is also against the substantial weight of the evidence because no one from Kildonan testified at the hearing in December, 2011, or at the compliance hearing on April 30, 2012.  The hearing officer based her findings of fact in the March 2, 2012, Decision and Order (which she referenced in her May 18, 2012, Decision and Order) solely upon information provided on Kildonan's website, evidence Pembroke could not cross-examine, and parents' expert's testimony based upon a visit some four years before and a telephone call to Kildonan shortly before the hearing.

51.    Although the hearing officer makes much of the fact that students currently enrolled in LEP have different language-based disabilities from Jack, as well as ADHD and social issues (Exhibit B, p.7), the evidence is clear that the program is flexibly designed to meet the needs of the language-based disability students who are in the program at any given time.  Moreover, there is absolutely no evidence in the record that Kildonan students do not also have other disabilities, ADHD, ADD, or social or behavioral problems in addition to dyslexia.  The hearing officer erroneously declined to take judicial notice of case law submitted for the purpose of pointing out the absence of such evidence by showing that at least at the time of those cases, Kildonan had students with ADD and behavioral problems, and that an administrator testified that Orton-Gillingham was not used in content-area classes.  Exhibit B, p.8, n.9.  The cases were not offered for the conclusions reached which disapproved public funding.

52.     Although the hearing officer's March 2, 2012, Order directed Pembroke to locate or create a program, the May 18, 2012, decision rejects the LEP, stating "[i]t may be that the LEP program could be adapted to meet Student's needs, but Student cannot afford to experiment."   Exhibit B, p.8.  The hearing officer's decision is contrary to the substantial weight of the unrefuted evidence which proved that LEP could and would create a program which would meet Jack's needs within an existing language-based substantially separate program.

53.     The hearing officer's May 18, 2012, Decision and Order to place Jack at the Kildonan School based upon the scant evidence presented in the December, 2011 hearing, following her conclusion that "Kildonan *appears* to be an appropriate placement for Student" (Exhibit B, p.8 no), is clearly unsupported by the evidence, contrary to law, arbitrary and capricious, and must be reversed.

## COUNT THREE

54.     Pembroke incorporates herein by reference the allegations in paragraphs 1-53 as if fully restated herein.

56.     The BSEA's March 2, 2012, Decision and Order and its May 18, 2012, Decision and Order violate M.G.L. c.30A in that the BSEA decisions:

1.     violate constitutional provisions requiring due process of law,

2.     are based upon errors of law,

3.     are made upon unlawful procedure,

4.     are unsupported by substantial evidence,

5.     are arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

WHEREFORE, Pembroke respectfully prays that this Court:

1       assume jurisdiction of this action;

2.       issue a stay of the May 18, 2012, order directing Pembroke to place Jack

in the highly restrictive private residential Kildonan School in Armenia, New York;

3.       reverse the March 2, 2012, Decision and Order directing Pembroke to

locate or create a public or private educational placement for Student that is a fully-

integrated language-based program designed to meet the needs of children with at least

average intelligence who have severe dyslexia, and are several years behind their grade

level in basic reading and writing skills which must provide, at a minimum, daily

individual Orton-Gillingham tutoring in reading by appropriately qualified staff, as well

as corresponding instruction in writing because it is unsupported by the facts and

applicable law;

4.       find that the 2011-2012 IEP or the 2011-2012 IEP as amended by Exhibit

C provided/provides/will provide Jack a free appropriate public education in the least

restrictive setting;

5.       find that the hearing officer deprived Pembroke of due process in

scheduling the compliance hearing for April 30, 2012, under the circumstances of this

case;

6.       find that the hearing officer erroneously failed to take judicial notice of

earlier cases whose facts clearly raise questions about the appropriateness of the Kildonan

School for Jack, especially based upon the hearing officer's analysis in the May 18, 2012,

Decision and Order;

7.      reverse the May 18, 2012, Decision and Order directing Pembroke to place Jack in a private, residential school in Armenia, New York, because it is unsupported by the facts and applicable law;

8.      find either that Jack should be placed at Pembroke Community Middle School or, alternatively, in the Language Enhancement Program at South Shore Educational Collaborative; and

9.      grant such other and further relief as the Court deems proper.

DATED at Quincy, Massachusetts, this 31st day of May, 2012.

PEMBROKE PUBLIC SCHOOLS
By Its Attorney,


Doris R. MacKenzie Ehrens
BBO # 544252
Murphy, Hesse, Toomey & Lehane, LLP
300 Crown Colony Drive
P.O. Box 9126
Quincy, MA  02269-9126
617) 479-5000

- 17 -